IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

CALELAH JOHN LATTISAW,

*Petitioner*,

*v.*

UNITED STATES OF AMERICA,

*Respondent*.

Criminal Action No. ELH-15-345
(Related Civil Action No. ELH-17-060)

**MEMORANDUM OPINION**

This Memorandum Opinion resolves a "Motion to Vacate, Set Aside, or Correct
Sentence" (ECF 65), filed under 28 U.S.C. § 2255 by Calelah John Lattisaw, the self-represented
petitioner. It is supported by a memorandum of law (ECF 65-1) (collectively, the "Petition").
Lattisaw has also filed a "MOTION FOR LEAVE TO FILE AMENDED AND
SUPPLEMENTAL PLEADINGS." *See* ECF 66 ("Motion to Amend") (capitalization in
original).

Additionally, Lattisaw submitted filings styled "Supplemental Pleading Rule 15(d)" (ECF
72); "Fed. R. Civ. Pro. Rule 15 Amended and Supplemental Pleadings 15(d) Motion" (ECF 77);
and "Motion for Judgment on Partial Findings For Movant's 28 U.S.C.S. [sic] § 2255 Claim
(Fed. R. Civ. P. 52(c))." ECF 79. Lattisaw also seeks a transcript from August 24, 2016, at
government expense. ECF 68. And, he seeks the appointment of counsel. ECF 67.

The government opposes the Petition (ECF 73, "Opposition"), and has filed two exhibits.
*See* ECF 73-1; ECF 73-2. Lattisaw has replied (ECF 76, "Reply"), and he provided additional
exhibits. ECF 76-1; ECF 76-2; ECF 76-3.

I am mindful that a self-represented litigant is generally "held to a 'less stringent
standard[ ]' than is a lawyer, and the Court must liberally construe his claims, no matter how

'inartfully' pled." *Morrison v. United States*, RDB–12–3607, 2014 WL 979201, at \*2 (D. Md. Mar. 12, 2014) (internal citations omitted); *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (noting that a self-represented litigant's submissions are to be liberally construed); *see also Haines v. Kerner*, 404 U.S. 519, 520 (1972) (stating that claims of self-represented litigants are held "to less stringent standards than formal pleadings drafted by lawyers"); *Bala v. Commonwealth of Va. Dep't of Conservation & Recreation*, 532 F. App'x 332, 334 (4th Cir. 2013) (per curiam) (same).

Because Lattisaw is proceeding without counsel, I shall construe Lattisaw's supplemental filings as amendments to the Petition. For the purpose of this Memorandum Opinion, I shall refer to ECF 72, ECF 77, and ECF 79 collectively as the "Supplemental Filings."

Under 28 U.S.C. § 2255(b), the post-conviction court must hold a hearing "[u]nless the motion and the files and records conclusively show that the prisoner is entitled to no relief. . . ." *United States v. LeMaster*, 403 F.3d 216, 220-23 (4th Cir. 2005); *see, e.g.*, *United States v. White*, 366 F.3d 291, 302 (4th Cir. 2004). Courts have determined that a hearing is not necessary where "the motion . . . fail[s] to allege sufficient facts or circumstances upon which the elements of constitutionally deficient performance might properly be found [or] where the defendant has failed to present any affidavits or other evidentiary support for the naked assertions contained in his motion." *United States v. Taylor*, 139 F.3d 924, 933 (D.C. Cir. 1998) (internal quotation marks and citation omitted); *accord United States v. McGill*, 11 F.3d 223, 225–26 (1st Cir. 1993). On the other hand, a hearing is generally "required when a movant presents a colorable Sixth Amendment claim showing disputed material facts and a credibility determination is necessary to resolve this issue." *United States v. Robertson*, 219 Fed. App'x 286, 286 (4th Cir. 2007); *see also United States v. Ray*, 547 Fed. App'x 343, 345 (4th Cir. 2013).

No hearing is necessary to resolve this matter. For the reasons that follow, I shall deny the Petition. A Certificate of Appealability shall not issue.

## I. Factual and Procedural Background[1]

On an unspecified date, Lattisaw applied for Social Security Administration ("SSA") Supplemental Security Income ("SSI"), on the basis that he was disabled due to a diagnosis of schizophrenia. ECF 47 at 8. The SSI Application notified Lattisaw that he was required to inform the SSA of any change regarding his "living situation, resources, or income." *Id.* At the time, Lattisaw was living with two other individuals who were receiving SSA benefits, a fact he did not disclose. *Id.* Further, Lattisaw represented to the SSA that he had no other income. *Id.* However, "Lattisaw took several steps to hide additional income and assets" from the SSA. *Id.*

Lattisaw began receiving benefits from the SSA in February 1993. ECF 47 at 8. During 1997, Lattisaw was living with his sister-in-law, S.L.[2], who received "Survivor Insurance Benefits" from the SSA, and a "D.C. pension" administered by the U.S. Treasury. *Id.* S.L. received benefits "via direct deposit into an Industrial Bank account in S.L.'s name." *Id.* Lattisaw was added as a co-signor on S.L.'s Industrial Bank account under the alias "John H. Lattisaw." *Id.* Additionally, Lattisaw used the Social Security Number of B.K. for his own on the account. *Id.* S.L. died on November 23, 1997, and Lattisaw failed to alert either the SSA or the U.S. Treasury of her death. The SSA and the U.S. Treasury continued to deposit benefits into S.L.'s Industrial Bank Account until 2010, amounting to $44,962.00 from the SSA and $593,344.22 from the U.S. Treasury. *Id.*

---

[1] The facts regarding Lattisaw's criminal activity are derived from Lattisaw's Plea Agreement (ECF 47), to which he stipulated. *Id.* at 7.

[2] In the Plea Agreement, S.L., B.K., and M.B. are referred to only by their initials. *See* ECF 47. They shall be addressed here in the same way, to protect their identities.

Lattisaw withdrew "substantially all" of these benefits from the Industrial Bank Account via "ATM withdrawals and debit purchases." *Id.* Each time Lattisaw "made a purchase or withdrawal Lattisaw caused Industrial Bank, located in Washington D.C., to communicate, via interstate wire, with the point of purchase to approve the withdrawal or purchase." *Id.* at 8, 9. Lattisaw failed to inform the SSA of income he was receiving from S.L.'s benefits. *Id.* at 9.

In 2003, Lattisaw married an elderly woman, M.B., and attempted to sell her house. *Id.* at 9. M.B.'s family "blocked the sale and annulled the marriage." *Id.* However, in 2006, Lattisaw "moved M.B. out of her nursing facility and into the home [Lattisaw] shared with his girlfriend." *Id.* He then remarried M.B. and took "power of attorney over M.B.'s bank account." *Id.* Once again, he did not alert the SSA of these changes in his living arrangement or in his income. *Id.* Lattisaw was added as a co-signor to M.B.'s bank account, again using the alias "John H. Lattisaw" and B.K.'s Social Security Number, "thereby preventing the SSA from locating the additional income." *Id.*

M.B. died on June 16, 2006. ECF 47 at 9. Subsequently, Lattisaw "liquidated a Certificate of Deposit in M.B.'s PNC account and removed $161,000." *Id.* at 9. He then opened a new bank account using B.K.'s Social Security Number and the alias "John H. Lattisaw". *Id.* Lattisaw failed to report this income to the SSA. *Id.* From 2000 to 2015, Lattisaw received $110,107.00 in SSI benefits "to which he was not entitled." *Id.*

On June 17, 2015, Lattisaw was indicted on three counts of wire fraud, and aiding and abetting, in violation 18 U.S.C. §§ 1343 and 2. He was also charged with two counts of Social Security Benefit fraud, in violation of 42 U.S.C. § 408(a)(4)(ii) and 42 U.S.C. § 1383a(a)(3)(A). ECF 1.

On May 16, 2016, Lattisaw entered a plea of guilty to Count One, charging wire fraud, in violation of 18 U.S.C. § 1343. *See* ECF 46; *see also* ECF 71. The plea was entered pursuant to a Plea Agreement, docketed at ECF 47. Notably, the plea was entered under Fed. R. Crim. P. 11(c)(1)(C), in which the parties stipulated to a sentence of 36 months' imprisonment with three years' supervised release. *Id.* at 4. Additionally, the parties stipulated to the entry of a restitution order in the amount of $748,403.22. *Id.* at 5.

Sentencing was held on August 24, 2016. ECF 60. The Court determined that the defendant's offense level was 22, with a criminal history category of I. His advisory guidelines range called for a sentence of incarceration ranging between 41 and 51 months of incarceration. But, the Court accepted the C Plea, and sentenced Lattisaw to 36 months' imprisonment and three years of supervised release. *See* ECF 61 (Judgment) at 2. Counts Two through Five of the Indictment were dismissed on motion of the Government. *See* ECF 61. Lattisaw did not note an appeal to the United States Court of Appeals for the Fourth Circuit. *See* Docket in 15-cr-00345.

On January 9, 2017, Lattisaw filed the Petition. ECF 65. He subsequently filed several additional motions. ECF 72; ECF 76; ECF 77; ECF 79. In sum, Lattisaw sets forth four arguments: (1) the underlying charges of wire fraud and aiding and abetting are invalid, (2) his guilty plea was unknowing and involuntary, (3) he received ineffective assistance of counsel, for various reasons, and (4) restitution is not proper in this case.[3]

---

[3] Additionally, Lattisaw claims the Indictment was deficient because it failed to mention the "intangible rights doctrine . . . ." ECF 65-1 at 1. As the government points out, Lattisaw appears to be referring to what is known as the "honest-services" doctrine. ECF 73 at 7. Lattisaw cites to *McNally v. United States*, 483 U.S. 350, 356 (1987), which stated that the mail fraud statute "clearly protects property rights, but does not refer to the intangible right of the citizenry to good government." The *McNally* Court recognized schemes to defraud citizens of their intangible rights to honest and impartial government." *Id.* at 375.

Additional facts are included in the Discussion.

## II.    Discussion

Pursuant to 28 U.S.C. § 2255(a), a prisoner in federal custody may "move the court which imposed the sentence to vacate, set aside or correct the sentence" if the petitioner shows "that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack."

### A.    The Charges of Wire Fraud; Aiding and Abetting

In the Petition (ECF 65) and in the Supplemental Filings, (ECF 72), Lattisaw argues that his "due process rights were infringed" because the Indictment lacked a "plain, concise, and definite written statement of facts constituting the offense charged. . . ." ECF 65-1 at 1. Further, Lattisaw argues that "[h]is actions did not add up to federal wire fraud," because he was under no duty to disclose, and "'there is no evidence that Mr. Lattisaw misled anyone about any material facts or promises about future actions.'" ECF 72 at 2.

As the government argues, Lattisaw is precluded from challenging the validity of his Indictment because of his guilty plea. *See* ECF 73 at 6. The Supreme Court explained in *Tollett v. Henderson*, 411 U.S. 258, 267 (1973):

> [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.

---

The government is correct in concluding that the "honest-services" doctrine does not apply to Lattisaw's case because he "was charged with and convicted of stealing money from the government - not depriving anyone of their intangible rights." ECF 73 at 7.

*See United States v. Broce*, 488 U.S. 563, 569 (1989) (stating that if "the underlying guilty plea was both counseled and voluntary," the conviction and plea "foreclose" collateral attack); *see also United States v. Christian*, 184 F. App'x 319, 321 (4th Cir. 2006) (stating that a guilty plea "acts as a waiver of all nonjurisdictional defects in the indictment"). Thus, Lattisaw is precluded from attacking his Indictment and the "invalidity" of the "underlying charge." ECF 65-1 at 1.

However, even if Lattisaw were not precluded from making these claims, his arguments are without merit. The Fourth Circuit articulated the standards for the sufficiency of an Indictment in *United States v. Brandon*, 298 F.3d 307 (4th Cir. 2002), stating, *id.* at 310 (citations omitted; emphasis in *Brandon*):

> "[A]n indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." Usually "an indictment is sufficient if it alleges an offense in the words of the statute," as long as the words used in the indictment "fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence[.]" However, simply parroting the language of the statute in the indictment is insufficient. When the words of a statute are used to describe the offense generally, they "must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offence, coming under the general description, with which he is charged." Thus, the indictment must also contain a "statement of the *essential facts* constituting the offense charged."

*See also United States v. Wicks*, 187 F.3d 426, 427 (4th Cir. 1999); *United States v. Darby*, 37 F. 3d 1059, 1063 (4th Cir. 1994); *United States v. Cobb*, 905 F.2d 784, 790 (4th Cir. 1990), *cert. denied*, 498 U.S. 1049 (1991).

Lattisaw's claim that the Indictment lacked "plain, concise . . . facts constituting the offense charged," and that it omitted the "elements of the offense," is simply unfounded. *See* ECF 1. As explained by the government in its Opposition (ECF 73), the Indictment detailed Lattisaw's "conduct, the scheme, the offenses, and the elements of those offenses." ECF 73 at

7. The Indictment included sufficient factual detail so as to apprise Lattisaw of the charges against him. *See* ECF 1 at 3-6. Specifically, the Indictment included the dates and locations of each occurrence of wire fraud. ECF 1 at 7.

## B. Unknowing and Involuntary Plea

In the Petition (ECF 65), as supplemented (ECF 72), Lattisaw argues that his guilty plea was not voluntary or informed. ECF 65-1 at 1; ECF 72 at 2, 3. He asserts that he "did not receive real notice of the charge because he was not informed of both the nature of the charge to which he was pleading guilty and its elements." ECF 65-1 at 1. Further, Lattisaw claims he "was misinformed as to [the] possible maximum sentence." *Id.* Additionally, he claims the guilty plea he entered "cannot be truly voluntary because Mr. Lattisaw does not possess an understanding of the law or relation to the facts." ECF 72 at 3.

A defendant must know the direct consequences of his guilty plea in order for it to be knowing and voluntary. *Brady v. United States*, 397 U.S. 742, 755 (1970). The Supreme Court has explained that, under Rule 11 of the Federal Rules of Criminal Procedure, "the district court is required, as a precondition to acceptance of a guilty plea, to inform the defendant in person of the specified rights he or she may claim in a full criminal trial and then verify that the plea is voluntary by addressing the defendant." *Gonzalez v. United States,* 553 U.S. 242, 247 (2008). This "requirement is satisfied by a colloquy between the judge and the defendant, reviewing all the rights listed in Rule 11." *Id.*

In *United States v. Lemaster*, 403 F.3d 216, 222 (4th Cir. 2005), the Court stated that, "in the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should, without holding an evidentiary

hearing, dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements." This concept applies here.

The government submitted as an exhibit a copy of the Rule 11 transcript, docketed at ECF 73-1. The court reporter's transcript is also docketed at ECF 71. For convenience, I shall cite to ECF 71.

At the outset of Lattisaw's rearraignment on May 16, 2016, Lattisaw took an oath to tell the truth. ECF 71 at 2. This Court then explained the significance of that oath. *Id.* at 4. And, Lattisaw indicated that he understood. *Id.* The following colloquy is relevant, ECF 71 at 4:

> THE COURT: Let me also be sure you realize that you just took an oath to tell the truth. So this does obligate you to answer my questions truthfully. And if you were to fail to do so, it's possible you would subject yourself to further charges on matters such as false statements or perjury. Do you understand what I just said?
>
> LATTISAW: Yes, Your Honor.

Lattisaw also confirmed, under oath, that he had read and understood his Plea Agreement.

The following exchange at the Rule 11 hearing is pertinent, ECF 71 at 9:

> THE COURT: Well, let me ask you this, sir. Were you able to read the charges filed against you?
>
> LATTISAW: Yes, Your Honor.
>
> THE COURT: Did you fully discuss them with your lawyer?
>
> LATTISAW: Yes, Your Honor.
>
> THE COURT: Has he answered all of your questions?
>
> LATTISAW: Yes, Your Honor.
>
> * * *
>
> THE COURT: Okay. Right above your signature, sir, it says in part, quote: "I have read this agreement and carefully reviewed every part of it with my attorney. I understand it and voluntarily agree to it. Specifically, I have reviewed the factual and advisory guidelines stipulation with my attorney and I do not wish to

change any part of it. I am completely satisfied with the representation of my attorney." Is that a true and accurate statement?

LATTISAW: Yes, Your Honor.

The Court also reviewed with Lattisaw the nature of the charge and its elements (ECF 71 at 12), as well as the maximum penalties (*id.* at 13), the anticipated sentencing guidelines calculations (*id.* at 14-19), the amount that Lattisaw would be required to pay in restitution (*id.* at 21), and the rights Lattisaw waived by pleading guilty (*id.* at 23-25). At the conclusion of the plea colloquy, and after the government's recitation of the stipulated statement of facts, the following exchange ensued, ECF 71 at 38:

THE COURT: Do you still wish to plead guilty?

LATTISAW: Yes, Your Honor.

THE COURT: Are you pleading guilty freely and voluntarily?

LATTISAW: Yes, Your Honor.

THE COURT: Are you pleading guilty because you are guilty as charged?

LATTISAW: Yes, Your Honor.

The Court's comprehensive Rule 11 colloquy, coupled with Lattisaw's sworn statements during the plea colloquy, establish that the guilty plea was informed and voluntary. "A defendant's solemn declarations in open court affirming [a plea] agreement . . . 'carry a strong presumption of verity.'" *United States v. White*, 366 F.3d 291, 295 (4th Cir. 2004) (quoting *Blackledge v. Allison*, 431 U.S. 63, 76 (1977)). "Indeed, because they do carry such a presumption, they present 'a formidable barrier in any subsequent collateral proceedings.'" *White*, 366 F.3d at 295-96 (quoting *Blackledge*, 431 U.S. at 74). A court must be able to rely on a defendant's statements made under oath during a properly conducted Rule 11 plea colloquy. *United States v. Bowman*, 348 F.3d 408, 417 (4th Cir. 2003). Notably, "a more

lenient approach . . . 'would eliminate the chief virtues of the plea system—speed, economy, and finality.'" *White*, 366 F.3d at 296 (citation omitted).

Lattisaw's conclusory, post-plea contention that his plea was not knowing and voluntary does not suffice to contradict the plea advisement or Lattisaw's sworn statements at his Rule 11 hearing. See *United States v. Ubakanma*, 215 F.3d 421, 424 (4th Cir. 2000) (stating that "conclusory post plea assertions that [a defendant's] plea was not knowing and voluntary, ... fail to overcome the barrier of the sworn statements made at his Rule 11 hearing").

### C.     Ineffective Assistance of Counsel

Lattisaw presents numerous claims of ineffective assistance of counsel.  *See* ECF 65-1; ECF 72; ECF 76; and ECF 77.  Before addressing these arguments, I pause to review the applicable standard that governs such claims.

The Sixth Amendment guarantees a criminal defendant the right to effective assistance of counsel.  *See generally Missouri v. Frye*, 566 U.S. 134, (2012); *Lafler v. Cooper*, 566 U.S. 156 (2012); *Padilla v. Kentucky,* 559 U.S. 356 (2010).  To lodge a successful challenge under 28 U.S.C. § 2255 based on a Sixth Amendment claim of ineffective assistance of counsel, a petitioner must satisfy the two-prong test set forth in *Strickland v. Washington,* 466 U.S. 668, 687–88 (1984); s*ee Chaidez v. United States,* 568 U.S. 342 (2013); *Hill v. Lockhart,* 474 U.S. 52, 57 (1985); *see, e.g.*, *United States v. Baker,* 719 F.3d 313, 318 (4th Cir. 2013).

First, the petitioner must show that his counsel's performance was not "within the range of competence normally demanded of attorneys in criminal cases," *Strickland,* 466 U.S. at 687, and was "below an objective standard of reasonableness," measured by the "prevailing professional norms."  *Id.* at 688.

The performance prong is "'difficult'" to establish. *Lawrence v. Branker*, 517 F.3d 700, 709 (4th Cir. 2008) (quoting *James v. Harrison,* 389 F.3d 450, 457 (4th Cir. 2004)). "Keenly aware of the difficulties inherent in evaluating counsel's performance, the Supreme Court has admonished that courts 'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Lawrence*, 517 F.3d at 708 (quoting *Strickland,* 446 U.S. at 689); *see Harrington v. Richter*, 562 U.S. 86, 104 (2011); *Lee v. Clarke*, 781 F.3d 114, 122 (4th Cir. 2015). Indeed, "the *Strickland* standard must be applied with scrupulous care," *Harrington*, 562 U.S. at 105, and "the standard of judging counsel's representation is a most deferential one." *Id.* The central question is whether "an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Harrington*, 562 U.S. at 88 (quoting *Strickland*, 466 U.S. at 690).

Second, the petitioner must show that his counsel's deficient performance "prejudiced [his] defense." *Id.* at 687. To satisfy the "prejudice prong," a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 697; *see Lockhart v. Fretwell,* 506 U.S. 364, 369 (1993) (stating that, under the second prong, the petitioner must prove that the "result of the proceeding was fundamentally unfair or unreliable").

The *Padilla* Court said, 559 U.S. at 371: "Surmounting *Strickland's* high bar is never an easy task." This is because a petitioner is not entitled to post-conviction relief based on prejudice where the record establishes that it is "not reasonably likely that [the alleged error] would have made any difference in light of all the other evidence of guilt." *Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010).

In the case at bar, Lattisaw entered into a guilty plea with the government, by which he pleaded guilty to Count One of the Indictment, charging him with wire fraud. The case of *Hill*, 474 U.S. 52, is noteworthy. There, the Supreme Court explained that "where . . . a defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness [and intelligence] of the plea depends on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'" *Id.* at 56 (citing *McMann v. Richardson*, 397 U.S. 759, 771 (1970)). In assessing whether counsel's performance was deficient, courts adopt a "strong presumption" that counsel's actions fell within the "wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.

*Hooper v. Garraghty*, 845 F.2d 471 (4th Cir. 1988), also provides guidance. In that case, the Fourth Circuit described a petitioner's burden in the context of a post-guilty plea claim of ineffective assistance of counsel. The Court said, *id.* at 475 (quoting *Hill*, 474 U.S. at 59): "When a defendant challenges a conviction entered after a guilty plea, [the] 'prejudice' prong of the [*Strickland*] test is slightly modified. Such a defendant 'must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" *Accord Fields v. Attorney Gen. of Md.*, 956 F.2d 1290, 1294-99 (4th Cir. 1992). Moreover, when a criminal defendant claims ineffective assistance of counsel after pleading guilty, he is "bound," absent clear and convincing evidence to the contrary, "by the representations he made under oath during a plea colloquy." *Fields*, 956 F.2d at 1299; *see Blackledge v. Allison*, 431 U.S. 63, 74-75 (1977).

## 1.

In the Petition (ECF 65), Lattisaw claims that his trial counsel was ineffective because he failed to interview Lattisaw or "discuss theories of defense." ECF 65-1 at 2. Moreover, Lattisaw

argues that "other clear avenues of defense were not pursued by counsel." *Id.* However, Lattisaw does not describe these "other clear avenues" of defense. And, as the Rule 11 transcript reflects, Lattisaw affirmed while under oath that he was fully satisfied with his trial counsel, and that he had discussed his options in full with his attorney. The following exchange is pertinent, ECF 71 at 10:

> THE COURT: Without getting into the particulars of any of your private conversations with [defense counsel], can you tell me in general whether you have discussed with him your rights in connection with these charges, such as . . . defenses you might have [raised] to the charges . . . ?"
>
> LATTISAW: Yes, Your Honor.
>
> THE COURT: Is there anything you wanted [defense counsel] to do for you that he failed to do?
>
> LATTISAW: No, Your Honor.
>
> THE COURT: Do you have any complaints about his legal representation of you?
>
> LATTISAW: No, Your Honor.
>
> THE COURT: Are you, in fact fully satisfied with the services he has provided to you in connection with his representation of you in this case?
>
> LATTISAW: Yes, Your Honor.

Lattisaw's sworn statements during the guilty plea proceeding establish that he was satisfied with his trial counsel, and that there was nothing else he wanted his attorney to do for him. Lattisaw has presented no evidence to support his claim that his trial counsel was ineffective based on the failure to "discuss theories of defense."

**2.**

In the first Supplemental Filing (ECF 72), Lattisaw alleges that his attorney labored under a "conflict of interest" because of "issues that arose" in regard to discovery documents that the

government provided. ECF 72 at 3-4. Lattisaw does not clarify the nature of this statement. Nor does he identify the conflict or the pertinent "discovery documents".

To demonstrate that a conflict of interest resulted in ineffective assistance of counsel, a petitioner must satisfy the two-part test articulated in *United States v. Nicholson*, 475 F.3d 241, 249 (4th Cir. 2007). To "establish that a conflict of interest resulted in ineffective assistance, '[m]ore than a mere possibility of a conflict . . . must be shown.' The petitioner must show (1) that his lawyer was under 'an actual conflict of interest' and (2) that this conflict 'adversely affected his lawyer's performance.'" *Id.* at 249 (citations omitted and alterations in the original); *see Cuyler v. Sullivan*, 446 U.S. 335, 350 (1980).

Lattisaw's allegations do not support the finding of an actual conflict of interest. Lattisaw simply states that "defense counsel failed to examine the discovery documents that linked Mr. Lattisaw with any crime and failed to resist the presentation of arguably inadmissible evidence." *Id.* at 4. Lattisaw's conclusory assertion that his lawyer failed to examine discovery documents is unavailing.

Even assuming that an actual conflict existed, there is no evidence that it adversely affected counsel's performance. To establish an adverse effect, Lattisaw must satisfy a three-part standard, by a preponderance of the evidence:

1) Lattisaw must "'identify a plausible alternative defense strategy or tactic that his defense counsel might have pursued.'"

2) He "must establish that 'the alternative strategy or tactic was objectively reasonable under the facts of the case known to the attorney at the time of the attorney's tactical decision.'" To satisfy this requirement, Lattisaw "must show 'that the alternative strategy or tactic was "clearly suggested" by the circumstances.'"

3) Lattisaw must demonstrate that "'the defense counsel's failure to pursue that strategy or tactic was linked to the actual conflict.'"

*Nicholson*, 475 F.3d at 251-52 (quoting *Mickens v. Taylor*, 240 F.3d 348, 361 (4th Cir. 2001) (en banc)). Lattisaw's § 2255 pleadings fail to satisfy the three-part standard because Lattisaw puts forth no plausible alternative defense strategies.

Clearly, Lattisaw was not prejudiced by the supposed conflict. His attorney negotiated a C plea to a sentence well below the bottom of the applicable advisory sentencing guidelines range. The facts do not support a finding that counsel's performance in representing Lattisaw fell below an objective standard of reasonableness.

### 3.

Lattisaw claims in his Reply (ECF 76), that his attorney provided ineffective assistance of counsel because he "did not arrange a pre-plea or post-plea psychiatric examination" for Lattisaw, and failed to "raise the issue of Mr. Lattisaw's competence." ECF 76 at 2. He adds that his attorney failed to "present to the court ant [sic] psychological screening or other gross disorders, PTSD, depression, and erratic behaviors." *Id.* Lattisaw contends that he was prejudiced because his attorney's "failure to investigate and present mitigating evidence" resulted in "a completely inaccurate picture of Mr. Lattisaw's life to the court." *Id.* at 2, 3.

The case of *Hooper*, 845 F.2d 471, is instructive. In *Hooper*, the defendant had a history of mental illness. He entered a plea of guilty to second-degree murder. *Id.* As to his post-conviction claims, the Fourth Circuit noted that the "burden is on Hooper to establish a reasonable probability that if his lawyers had obtained a psychiatric report, he would have rejected the plea agreement" and gone to trial. *Id.* at 475.

The Fourth Circuit examined a psychiatric report obtained after the guilty plea against the background of the circumstances Hooper faced at the time he decided to plead guilty. It was not persuaded that the report provided evidence sufficient to establish a reasonable probability that

Hooper would have declined the plea agreement and gone to trial, even if his counsel had obtained a psychiatric report before the plea. *Id.* at 475-76. Although the Court concluded that the failure to obtain a psychiatric report fell below the objective standard of reasonableness established by *Strickland*, it was satisfied that Hooper was not prejudiced because there was no reasonable probability that the deficiency changed the outcome of the proceeding. *Id.*

Lattisaw does not suggest that he would have rejected the Plea Agreement and proceeded to trial but for his lawyer's failure to obtain a mental health evaluation. Rather, Lattisaw asserts that his attorney "gave the sentencing judge an inaccurate view of Mr. Lattisaw's life" (ECF 76 at 2), but does not explain how this affected his sentence, which was imposed pursuant to a C plea.

In any event, Lattisaw's argument is contradicted by the record. This Court was well aware of Lattisaw's mental illness, both through the plea colloquy and the Presentence Report. ECF 53 ("PSR").

At the rearraignment, the Court addressed Lattisaw's mental illness, asking: "Have you been treated recently for any mental health and/or substance abuse problems?" ECF 71 at 4. Lattisaw replied, "Yes, Your Honor." *Id.* Lattisaw informed the Court that he was diagnosed with schizophrenia at age 12. ECF 71 at 5. He reviewed the treatment he had received (*id.*), his hospitalizations (*id.* at 5-6), and the medication he was then taking. *Id.* at 6, 7, 8. The Court then addressed counsel, inquiring whether counsel was satisfied that Lattisaw was "mentally alert and able to proceed." *Id.* at 8. Counsel explained: "I have met with him over the course of the last few months and I believe that he has articulated to me, prior to today, that he fully understands. And I believe that today he is fully articulate as to the questions you've asked him thus far." *Id.*

The Presentence Report (ECF 53) also sets forth Lattisaw's mental and emotional issues.

*Id.* ¶¶ 59, 60.  And, it detailed his medications. *Id.* ¶ 58.

Thus, I am unpersuaded that counsel "presented a completely inaccurate picture" of Lattisaw.  The Court was aware of Lattisaw's history of mental illness.  Most important, Lattisaw has not met his burden to show that if a mental health report had been obtained, he would have opted to go to trial.

### 4.

Lattisaw complains that his lawyer's "failures in . . . performance . . . caused prejudice . . . by affecting his sentence in triggering a sentence beyond the termination of the sentence that could constitute cruel and unusual punishment."  ECF 77 at 1.  According to Lattisaw, his attorney "failed to present to the court that Mr. Lattisaw had been under arrest and had been in government custody since 6/24/2015." *Id.* at 2.  Lattisaw claims that his sentence expiration should be "8/15/2018" not "8/15/2019," because he "was already in the government's custody for a total of 13 months prior to his sentencing." *Id.* at 2.

The Bureau of Prisons has exclusive authority under 18 U.S.C. § 3585(b) to calculate the amount of prior custody credit to which a federal offender is entitled.  *See United States v. Wilson*, 503 U.S. 329, 335 (1992) ("After a district court sentences a federal offender, the Attorney General, through the BOP, has the responsibility for administering the sentence.").  Under  18 U.S.C. § 3585(b), the BOP must give a defendant "credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences."  The district court cannot definitively calculate the prior amount of credit at sentencing.  *Wilson*, 503 U.S. at 334; s*ee also United States v. Hornick*, 815 F.2d 1156, 1160 (7th Cir. 1987) (noting that a district judge's direction to the BOP as to sentencing acts only as an advisory opinion).

Notably, Lattisaw's argument that his lawyer failed to present to the Court that Lattisaw had been "under arrest and in government custody since 6/24/2015" is contradicted by the record. The PSR indicated that Lattisaw had been detained on June 24, 2015, pending a detention hearing. But, on July 1, 2015, Lattisaw was released with pretrial supervision. ECF 53 at 1. Thus, Lattisaw was in custody for a total of 8 days, from June 24, 2015 to July 1, 2015, and the Court gave him credit for those days in the Judgment. *See* ECF 61 at 2.

Lattisaw appears to be arguing that he should be given credit for the period of time that he was released while on "pretrial supervision", which included location monitoring, among other restrictions. However, the restrictions that Lattisaw faced cannot be considered "official detention" under 18 U.S.C. § 3585. *See United States v. Guntharp*, 420 F. App'x 254, 256 (4th Cir. 2011) (noting that house arrest with electronic monitoring does not constitute time served); *United States v. Insley*, 927 F.2d 185, 186 (4th Cir. 1991) (holding that conditions of release imposed upon a defendant while out on bond are not equivalent to "official detention"); *United States v. Woods*, 888 F.2d 653, 654 (10th Cir. 1989) ("For the purpose of calculating credit for time served under 18 U.S.C. § 3585, 'official detention' means imprisonment in a place of confinement, not stipulations or conditions imposed upon a person not subject to full physical incarceration").

In sum, Lattisaw's contention lacks merit. He is not entitled to credit if he was not incarcerated.

### D.    Restitution Order

In his first Supplemental Filing (ECF 72), and in his Reply (ECF 76), Lattisaw challenges the Plea Agreement's Restitution Order, requiring payment of restitution in the sum of $748,403.22. Specifically, Lattisaw contends: "Restitution [is] invalid because [the] record [is]

insufficient to establish that the defendant's wire fraud proximately caused beneficiary liability to third party." ECF 72 at 5. Further, Lattisaw asserts that "federal courts cannot order restitution in a criminal case without a statutory basis . . . and no such basis existed." *Id.* at 8. Moreover, Lattisaw argues that he was legally entitled to S.L.'s benefits because she was his "common law wife", and he was her "beneficiary heir." ECF 76 at 3.

In ¶ 12 of the Plea Agreement (ECF 47), Lattisaw expressly agreed to the entry of a restitution order in the sum of $748,403.22. At the Rule 11 proceeding, in response to the Court's inquiry, Lattisaw expressly acknowledged that he made that agreement. ECF 71 at 21.

In *United States v. Fabian*, 798 F.Supp.2d 647, 684 (D. Md. 2011), Judge Blake observed that 28 U.S.C. § 2255 entitles a prisoner only "to attack the custodial component of a sentence." She acknowledged that, as of the time of that case, the Fourth Circuit had not addressed a post-conviction challenge to restituion, but observed that almost every other Court of Appeals to have considered the matter "has concluded that restitution orders cannot be attacked through a § 2255 petition, including those filed when the defendant is incarcerated. *Id.* Judge Blake also observed that "most courts have concluded that § 2255 is not the proper vehicle for collaterally challenging noncustodial punishments," such as restitution. *Id.* at 685.

That logic governs here. The challenge to the agreed upon restitution order in this proceeding is misplaced, and I shall deny it.

### E. Miscellaneous

Lattisaw seeks appointment of counsel (ECF 67) and a copy of his sentencing transcript, at government's expense. ECF 68. There is no constitutional right to counsel in a collateral attack on a prisoner's conviction. *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987); *Hunt v. Nuth*, 57 F.3d 1327, 1340 (4th Cir. 1995). But, the court may appoint counsel to represent a

financially eligible petitioner in a § 2255 proceeding, where the interests of justice so require. 18 U.S.C. § 3006A(a)(2)(B). Such a decision is within the discretion of the district court. *See*, *e.g.*, *Bowman v. White*, 388 F.2d 756, 761 (4th Cir. 1968). Rules 6(a) and 8(c) of the Rules Governing Section 2255 Proceedings mandate appointment of counsel for a non-capital habeas petitioner only when counsel is necessary for effective discovery or the matter proceeds to an evidentiary hearing.

In my view, Lattisaw's claims lack merit, and appointment of an attorney for him is not warranted. Because Lattisaw has not set forth any exceptional circumstances for the appointment of counsel, his motion will be denied.

I shall also deny the request for the sentencing transcript. A district court is permitted in this Circuit to consider a request for a transcript at the government's expense, prior to the filing of a § 2255 motion. *United States v. Shoaf*, 341 F.2d 832, 833-35 (4th Cir. 1964); *United States v. Glass*, 317 F.3d 200, 202 (4th Cir. 1963). However, when a petitioner was present for the guilty plea and sentencing proceedings, he generally "has sufficient information from his memory to file a § 2255 Motion without the need of a transcript as the petitioner is not required to set forth claims in a § 2255 Motion in great detail." *United States v. Jones*, 2:14-CR-132, 2016 WL 8933628, at *1 (E.D. Va. March 7, 2016).

A petitioner may be entitled to a transcript under 28 U.S.C. § 753(f) for a forthcoming 28 U.S.C. § 2255 hearing. But, he must first meet a standard of nonfrivolousness and need for the transcript. *In re Webb*, 900 F.2d 258 (4th Cir. 1990) ("One who seeks to attack a federal conviction under 28 U.S.C. § 2255 may obtain a transcript at government expense only upon a showing that the petition is not frivolous and that a transcript is needed to decide the issues raised."). That standard is not met here.

### III. Conclusion

For the reasons set forth above, I shall deny the relief requested in the Petition (ECF 65), as supplemented (ECF 72; ECF 76; ECF 77; ECF 79).

Pursuant to Rule 11(a) of the Rules Governing Proceedings under 28 U.S.C. § 2255, the Court is required to issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A certificate of appealability is a "jurisdictional prerequisite" to an appeal from the court's Order. *United States v. Hadden*, 475 F.3d 652, 659 (4th Cir. 2007).

A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(B)(2). A certificate of appealability will not issue unless the petitioner can demonstrate both "(1) that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and (2) that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Rose v. Lee*, 252 F.3d 676, 684 (4th Cir. 2001) (internal quotation marks omitted).

I am satisfied that Petitioner has not satisfied the standards set forth above. Therefore, a certificate of appealability shall not issue.

 An Order follows, consistent with this Memorandum Opinion.


Date: September 18, 2018                                    _____/s/_____
                                                           Ellen Lipton Hollander
                                                           United States District Judge